UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| JAMES ABSHER, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | Cause No. 3:16-CV-150 JD-MGG |
|  | ) |  |
| DR. THOMAS, *et al.*, | ) |  |
|  | ) |  |
| Defendants. | ) |  |

## OPINION AND ORDER

James Absher, a *pro se* prisoner, is suing Dr. Joseph Thompson[1] and Dr. Carl Kuenzli[2] whom he claims were deliberately indifferent to his broken left hand at the Indiana State Prison in 2015. Absher alleges that when Dr. Joseph Thompson removed the cast from his hand on September 30, 2015, it was still noticeably disfigured and broken, causing him pain. Absher asserts that Dr. Thompson ignored the condition of his hand and refused to provide any treatment until an x-ray later revealed that it was still broken. Absher also alleges that Dr. Carl Kuenzli knew that Absher needed treatment by an outside orthopedic specialist, but never approved an outside specialist to evaluate and treat him. The defendants filed a joint motion (ECF 27) arguing that they are entitled to summary judgment. Absher filed a motion (ECF 26) for summary

---

[1] Misidentified as "Dr. Thomas" in the complaint. See ECF 1; ECF 27 at 1.

[2] In the screening order, Absher was given leave to proceed against the "Regional Medical Director." ECF 5. Dr. Kuenzli answered the complaint as he was the Regional Medical Director in Indiana during the time period alleged in Absher's complaint. ECF 11, 12.

1

judgment as well.

Absher was provided with a "Notice of Summary Judgment Motion" as required by N.D. Ind. L.R. 56-1 and a copy of both Federal Rule of Civil Procedure 56 and Local Rule 56-1. ECF 29. That notice informed him of the importance of responding; that unless he disputed the facts presented by the defendant, the court could accept those facts as true. Fed. R. Civ. P. 56(e) ("If a party . . . fails to properly address another party's assertion of fact . . . the court may . . . consider the fact undisputed for purposes of the motion."). It also told him that unless he submitted evidence creating a factual dispute, he could lose this case. Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). Though Absher initially did not file a response to the defendants' motion for summary judgment, the court afforded him one more opportunity to do so. ECF 31. Absher has now filed his response, which largely consists of 75 pages of his own hand-written notes and medical records. ECF 32.

DISCUSSION

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986). Not every dispute between the parties makes summary judgment inappropriate; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* In determining whether summary judgment is appropriate, the deciding court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010). "However, our favor toward the nonmoving party does not extend to drawing inferences that are supported by only speculation or conjecture." *Fitzgerald v. Santoro*, 707 F.3d 725, 730 (7th Cir. 2013) (citing *Harper v. C.R. Eng., Inc.*, 687 F.3d 297, 306 (7th Cir. 2012)). When deciding cross-motions for summary judgment, the court must "constru[e] the evidence and all reasonable inferences in favor of the party against whom the motion under consideration is made." *Durable Manuf. Co. v. U.S. Dep't of Labor*, 578 F.3d 497, 501 (7th Cir. 2009).

To establish liability under the Eighth Amendment, a prisoner must show: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to his medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994.) A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention, and if untreated could result in further significant injury or unnecessary pain, and that significantly affects the person's daily activities or features chronic and substantial pain. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Deliberate

3

indifference is a high standard, and is "something approaching a total unconcern for a prisoner's welfare in the face of serious risks," or a "conscious, culpable refusal" to prevent harm. *Duane v. Lane*, 959 F.2d 673, 677 (7th Cir. 1992).  As the Seventh Circuit has explained:

> [C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so.

*Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005).

For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, he must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). As the Seventh Circuit has explained:

> [M]edical professionals are not required to provide proper medical treatment to prisoners, but rather they must provide medical treatment that reflects professional judgment, practice, or standards. There is not one proper way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field. A medical professional's treatment decisions will be accorded deference unless no minimally competent professional would have so responded under those circumstances.

*Id.* at 697-698. Negligence, incompetence, or even medical malpractice do not amount to deliberate indifference. *Pierson v. Hartley*, 391 F.3d 898, 902 (7th Cir. 2004); *Walker v. Peters*, 233 F.3d 494, 499 (7th Cir. 2000).

4

Furthermore, a prisoner is not entitled to demand specific care, nor is he entitled to the "best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Where the defendants have provided some level of care for a prisoner's medical condition, in order to establish deliberate indifference the prisoner must show that "the defendants' responses to [his condition] were so plainly inappropriate as to permit the inference that the defendants intentionally or recklessly disregarded his needs." *Hayes v. Synder*, 546 F.3d 516, 524 (7th Cir. 2008). A mere disagreement with medical professionals about the appropriate treatment does not amount to an Eighth Amendment violation. *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003). With these principles in mind, the court turns its attention to the requests for summary judgment.

    A.    <u>There is a genuine dispute as to whether Dr. Thompson was deliberately indifferent to Absher's broken left hand.</u>

Dr. Thompson is a medical doctor who "provided direct patient care to Mr. Absher while he was incarcerated at the Indiana State Prison." ECF 28-1 at 2. Dr. Thompson denies having been deliberately indifferent to Absher's broken left hand. In support, he has provided medical records related to the care Absher received as well as his own medical opinion. ECF 28-1; ECF 28-2. This evidence illustrates that on July 25, 2015, Absher submitted a health care request form stating that he tripped and fell and thought that he broke his hand. ECF 28-2 at 109. An x-ray confirmed that Absher had broken the fifth finger on his left hand. Id. at 17. On August 4, 2015, a short arm hard

5

cast was applied to Absher's left hand. ECF 28-1 at 3, 4; ECF 28-2 at 11-15. On September 30, 2015, Dr. Thompson removed Absher's cast. ECF 28-2 at 19.

It is what took place during the September 30, 2015, visit that is disputed and at the center of this lawsuit. According to Dr. Thompson, Absher's left hand was completely healed. There were no signs of swelling or tenderness to his left hand and Absher had no complaints. ECF 28-1 at 4; ECF 28-2 at 19. Therefore, he did not provide any further treatment to Absher on that date. To the contrary, Absher alleges that when the cast was removed on September 30, he was still in pain and told Dr. Thompson that something was wrong with his hand. ECF 1 at 4; ECF 26 at 2. Absher states his hand was still broken. Id. Nevertheless, Dr. Thompson ignored his complaints and refused to treat his broken hand or provide him with sufficient pain medication. Id.

On October 4, 2015, Absher submitted another health care request form stating that his hand has been in constant pain since the cast was removed. ECF 28-2 at 105. An x-ray confirmed that Absher's fifth finger on his left hand was broken. Id. at 21. Absher continued to receive medical treatment for his hand through March 2016. Id. at 75.

To survive summary judgment on his claim against Dr. Thompson, Absher must produce evidence suggesting that the condition of his hand on September 30, 2015, amounted to an "objectively serious medical condition," and that Dr. Thompson was "aware of the condition and knowingly disregarded it." *Ortiz v. Webster*, 655 F.3d 731 734 (7th Cir. 2011). Absher has met that standard here.

6

To start, a reasonable juror could find that Absher had a serious medical condition - a broken finger on his left hand -when Dr. Thompson removed the cast on September 30, 2015. Dr. Thompson argues that Absher's hand was healed on September 30, 2015, and that Absher simply re-broke the same hand a week later. ECF 28-1 at 4. In an attempt to argue that Absher's hand was healed, Dr. Thompson points to his own observations on September 30. ECF 28-1 at 4. However, Dr. Thompson's account of the condition of Absher's hand on September 30 is disputed. Thus, his observations are not conclusive evidence that Absher's hand was healed on September 30. In an attempt to establish that Absher simply re-broke his hand, Dr. Thompson relies on Nurse O'Neil's October 7, 2015, report where Absher told her that he "felt a pop when he got out of his bunk." ECF 28-2 at 25. But this report is not definitive evidence that Absher re-broke his hand. Indeed, Absher claims that his hand never healed. He states that it was still visibly broken and causing him pain on September 30, ECF 26 at 2, and continued to cause him severe pain continuously afterwards. ECF 28-2 at 105. Given that Absher claims his hand was still visibly broken and causing him pain on September 30, along with the fact that an x-ray taken a week later confirmed that the same hand was broken, the evidence could allow a reasonable factfinder to conclude Absher's hand was still broken (or at least not properly healed) on September 30. Although a factfinder might ultimately give more weight to the physician than Absher, to make that decision at this stage would be improper. *Wilson v. Williams*, 997 F.2d 348, 350 (7th Cir. 1993).

Similarly, a reasonable juror could also find that when Dr. Thompson removed Absher's cast on September 30, 2015, he knew or strongly suspected that Absher's hand was still broken (or not properly healed). During this visit, Absher claims to have told Dr. Thompson that his hand was still in pain and seemed broken. ECF 26 at 2. Absher says that he showed Dr. Thompson that his hand was "purple, discolored and disfigured." *Id.* Absher's contention is in direct conflict with Dr. Thompson's affidavit and medical records. ECF 28-1 at 4; ECF 28-2 at 19. But, this is just another genuine dispute; to make a credibility determination at this stage would amount to an improper weighing of the evidence. *Wilson*, 997 F.2d at 350. Thus, whether Dr. Thompson believed Absher's hand was broken on September 30, 2015, is a question for trial. *Mkt. St. Assocs. Ltd. P'ship v. Frey*, 941 F.2d 588, 597-98 (7th Cir. 1991) (noting that state of mind is an "inquiry that ordinarily cannot be concluded on summary judgment."). In his reply brief, Dr. Thompson argues that Absher's account is implausible in light of the medical records. ECF 33. The court recognizes that the medical records show Absher received a significant amount of medical attention for his broken hand. ECF 28-2. And, in light of this significant treatment, a jury could conclude that Absher's version of events is unbelievable. But, "[h]owever implausible [Absher's] account might seem, it is not [the court's] place to decide who is telling the truth." *Washington v. Haupert*, 481 F.3d 543, 550 (7th Cir. 2007).

Prison doctors cannot simply ignore serious medical conditions or an inmate's severe pain, and if Absher is believed, Dr. Thompson did just that. *Gonzalez v.*

*Feinerman*, 663 F.3d 311, 314-15 (7th Cir. 2011). Since Absher has put forth sufficient evidence to permit a reasonable juror to conclude that Dr. Thompson's inaction substantially and unreasonably delayed necessary treatment and needlessly prolonged Absher's pain," then he has done enough to withstand summary judgment. *Ortiz*, 655 F.3d at 735; *Gayton v. McCoy*, 593 F.3d 610, 623 (7th Cir. 2010).

>    B.   <u>The undisputed facts establish that Dr. Carl Kuenzli was not deliberately indifferent to Absher's need for an outside specialist.</u>

Dr. Carl Kuenzli is a physician "employed by Corizon Health, Inc. as the Regional Medical Director in Indiana." ECF 28-3 at 1. Absher was granted leave to proceed on his allegation that the Regional Medical Director refused to approve the request for him to see an outside orthopedic specialist. However, the undisputed evidence belies this allegation. The evidence reveals that the Regional Medical Director was not made aware of Absher's broken hand until October 7, 2015. ECF 28-1 at 33. On that date, the Regional Medical Director was asked to approve a request for Absher to see an outside orthopedic specialist. Id. The Regional Medical Director approved this request two days later and Absher visited an outside specialist on October 20, 2015. Id. at 33, 34. The Regional Medical Director's office was then asked to approve a second request in December 2015. In response, the Regional Medical Director requested another x-ray of Absher's hand be taken first to establish a medical necessity. ECF 28-2 at 112. After those x-rays were conducted, the Regional Medical Director approved Absher to go on a second visit in January 2016. ECF 28-2 at 115. This brief delay is

9

reasonable and not evidence of deliberate indifference. *Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995). Because the record is devoid of any evidence that the Regional Medical Director acted deliberately indifferent to Absher's need to see an outside specialist, summary judgment on his behalf is appropriate.

For these reasons, the court:

(1) DENIES the plaintiff's motion (ECF 26) for summary judgment;

(2) GRANTS IN PART and DENIES IN PART the Defendants' motion (ECF 27) for summary judgment; and

(3) DISMISSES Dr. Carl Kuenzli from this case.

SO ORDERED.

ENTERED: 2/12/2018            /s/JON E. DEGUILIO
                                                      Judge
                                                      United States District Court